IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL BROWN** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **INDEPENDENCE BLUE CROSS,** | : | |
| **KEYSTONE HEALTH PLAN EAST, INC.** | : | |
| **QCC INSURANCE COMPANY,** | : | |
| **MAGELLAN BEHAVIORAL HEALTH,** | : | |
| **INC., and MAGELLAN HEALTH** | : | |
| **SERVICES, INC.** | : | **NO. 08-1355** |

**MEMORANDUM AND ORDER**

**NORMA L. SHAPIRO, S.J.**                                                                                       **JULY 21, 2008**

Plaintiff, Michael Brown ("Brown"), filed this action in the Philadelphia County Court of Common Pleas against defendants Independence Blue Cross, Keystone Health Plan East, Inc. ("Keystone"), QCC Insurance Company ("QCC Insurance"), Magellan Behavioral Health, Inc., and Magellan Health Services, Inc.. Brown alleges defendants violated the Pennsylvania Unfair Insurance Practices Act ("UIPA") (Count I), acted in bad faith (Count II), and violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count III), by a delay in reimbursing him under his health insurance plan for one year. Defendants removed this action to federal court as preempted by the Employees Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*.[1] Brown, arguing his claims are not preempted by ERISA because he was not an "employee" under ERISA, has filed a motion to remand and defendants have filed a motion to dismiss Brown's claims as preempted under ERISA. Brown's

---

[1] There is no diversity of citizenship among the parties. Brown is a citizen of Pennsylvania. Defendants Independence Blue Cross, Keystone, and QCC Insurance are Pennsylvania corporations.

motion to remand will be denied. Defendants' motion to dismiss will be granted without prejudice to filing an amended complaint.

**I.     FACTS AND PROCEDURAL HISTORY**

Carol Melman ("Melman"),[2] formed ECA Properties, LLC ("ECA"), a Pennsylvania limited liability company, to diversify her investment portfolio; all ECA profits are used to purchase rental properties. (Melman Aff. ¶¶ 3, 5; Defs' Response to Mot. to Remand, Ex. 2.) Melman, then Brown's girlfriend, elected Brown as Vice President of ECA. (Pl.'s Mot. to Remand, Ex. C.) Under the election resolution, Brown was authorized to execute and deliver agreements, documents and/or instruments in connection with the day-to-day operation of ECA's business as determined by Melman. Id. Brown was not paid a salary, and had discretion whether to buy particular properties. (Melman Aff. ¶¶ 3, 5; Brown Aff. ¶¶ 2, 4.) According to Brown and Melman, ECA did not require Brown to do anything he chose not to do. (Melman Aff. ¶ 5; Brown Aff. ¶ 4.)

Melman applied to Independence Blue Cross for group health insurance coverage on behalf of ECA. In her "Application for New Small Employer Health Benefits," Melman stated there were two "active employees" (Melman and Brown). (Defs' Response to Mot. to Remand, Ex. 1.) According to Melman's application, ECA was to pay one hundred percent of the premium, and the employees had to work twenty hours per week to be eligible for coverage. Id. Brown completed Independence Blue Cross's "Universal Enrollment Form," selected "Employee Only" coverage, and signed after the "Employee Signature" notation. (Defs' Response to Mot. to

---

[2]Carol Melman has married Michael Brown and her legal name is now Carol Melman Brown. But at all times relevant to this action, she was not married to Michael Brown. For the purpose of clarity, the court will refer to Carol Melman Brown as "Melman."

Remand, Ex. 4.)  The insurance enrollment form included a verification that:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

Id.  Brown was insured under the health insurance contract between ECA and defendants Keystone and QCC Insurance, subsidiaries of defendant Independence Blue Cross.  The terms of the health insurance contract provided for seventy percent reimbursement for stays at a rehabilitation facility.  (Pl.'s Mot. to Remand, Ex. A.)

According to Brown's complaint, while insured, he stayed for four weeks at an alcohol and drug addiction rehabilitation facility.  Brown used his own funds to pay the $17,019.75 cost of the stay.  After returning from the rehabilitation facility in February 2006, Brown contacted Keystone to make a claim for reimbursement.  Keystone told him to collect documentation, so Brown obtained and submitted documentation to Keystone in June 2006.  In July 2006, Keystone sent Brown a check for $1,708.00.  Brown filed two administrative appeals, but Keystone denied Brown's claims for additional reimbursement without explanation.

Brown contacted Pro-Act, a consumer rights organization.  In March 2007, Pro-Act helped Brown file a health care complaint with the Pennsylvania Office of the Attorney General and the Commonwealth of Pennsylvania Insurance Department Bureau of Consumer Services.  Less than three months later, Keystone sent Brown a check for $10,161.72, the balance due Brown under his insurance contract.  In July 2007, the Pennsylvania Attorney General's Office received an unsigned "Position Statement" on Independence Blue Cross's letterhead; the statement attributed the delay in paying Brown's claim on defects in the claims processing

system.

Brown filed an action alleging violation of the UIPA (Count I), bad faith (Count II), and violation of the UTPCPL (Count III), in the Philadelphia County Court of Common Pleas. Defendants removed the action to this court and filed a motion to dismiss Brown's claims as preempted by ERISA. Brown filed a motion to remand to state court. This court heard oral argument on the outstanding motions.

## II. DISCUSSION

### A. Motion to remand

Brown argues his claims are not preempted by ERISA because he was not an "employee." A district court must remand a case to state court if it appears that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). Defendants bear the burden of establishing a right to removal. Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 359 (3d Cir. 1995). To determine whether a complaint is removable, the court begins with the "well-pleaded complaint rule." Id. at 353. Under the well-pleaded complaint rule, a cause of action "arises under" federal law, and removal is proper, only if a federal question is presented on the face of the plaintiff's properly pleaded complaint. Id. Ordinarily, the defense of preemption is insufficient justification to permit removal to federal court. Id. at 353-54. Brown has not presented a federal question on the face of his complaint; he alleges only state law claims that are ordinarily not removable to federal court.

There is a "complete preemption" exception to the well-pleaded complaint rule, where "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Id. at 354. Complete preemption

applies where the preemptive force of the federal statutory provision is so powerful it displaces entirely any state cause of action addressed by the federal statute. Id.

ERISA § 514 defines the scope of express preemption under ERISA. Under § 514(a), ERISA provisions "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in [§ 4(a) of ERISA] and not exempt under [§ 4(b) of ERISA]." 29 U.S.C. § 1144(a). But not all claims preempted by ERISA are subject to removal. Dukes, 57 F.3d at 355.

The Supreme Court found Congress intended the complete preemption doctrine to apply to state law causes of action which fit within the scope of civil enforcement provisions found in ERISA § 502(a). Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987). State law claims outside the scope of § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule and are not removable as completely preempted. Dukes, 57 F.3d at 355. When the doctrine of complete preemption does not apply, even if the state claim is arguably preempted under ERISA § 514(a), the district court lacks removal jurisdiction and must remand to the state court where the preemption issue can be resolved. Id. Only if there is complete preemption of Brown's state law claims under ERISA § 502(a) does this court have removal jurisdiction.

        1.        **Was Brown an employee?**

Brown argues ERISA does not apply to his cause of action because he was not an employee of ECA. The civil enforcement provisions in ERISA § 502(a) state:

A civil action may be brought –

(1) by a participant or beneficiary –
(A) for the relief provided for in subsection (c) of this section [concerning requests to the administrator for information], or

> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [breach of fiduciary duty];
>
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
>
> (4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title [information to be furnished to participants];
>
> (5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter;
>
> (6) by the Secretary to collect any civil penalty under paragraph (2), (4), (5), (6), (7), (8), or (9) of subsection (c) of this section or under subsection (i) or (l) of this section."
>
> 29 U.S.C. § 1132(a).

A "participant" is defined under ERISA as:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.
>
> 29 U.S.C. § 1002(7).

To establish participant status, the plaintiff must be an employee, and must be eligible to receive a benefit under the plan according to the language of the plan. Bauer v. Summit Bancorp, 325 F.3d 155, 160 (3d Cir. 2003). Brown does not dispute he was eligible to receive a benefit under

his health insurance plan according to the language of the plan, but he argues he was not an employee of ECA.

> The Supreme Court has adopted the following common law definition of "employee":
>
> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.
>
> Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323-24 (1992).

Notwithstanding the representations in ECA's "Application for New Small Employer Health Benefits" and Brown's health insurance enrollment form that Brown was an employee of ECA, Brown argues he was not an employee because he was not paid a salary and he did not perform any duties he chose not to perform.

Defendants argue that when Melman applied for insurance coverage on behalf of ECA, she represented to defendant Independence Blue Cross that she and Brown were employees of ECA. An insurance application is part of the agreement between the parties and, taken together with the policy, constitutes the insurance contract. Murray v. John Hancock Life Ins. Co., 69 A.2d 182, 183 (Pa. Super. 1949). Melman completed on behalf of ECA an "Application for New Small Employer Health Benefits." In this application, Melman stated there were two active employees, and one hundred percent of the premium was to be paid by ECA. She also stated an employee must work a minimum of twenty hours per week to be eligible for the employer group

health plan. Brown completed an insurance enrollment form for "employee only" coverage and signed after the "employee signature" notation. The insurance enrollment form included a verification that:

> "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties."

The representations that Brown, as Vice President of ECA, was an employee are part of the insurance contract between ECA and defendants.

Whether or not Brown was an employee under the common law factors articulated in Darden, he is estopped from claiming he was not an employee of ECA because of his prior representations and the benefits received from defendants based on such representations. "Pennsylvania insurance law incorporates principles of equitable estoppel." West American Insurance Co. v. Park, 933 F.2d 1236, 1239 (3d Cir. 1991). A person who induces reliance by another on the existence of facts is estopped from prejudicially asserting facts in opposition to those first held out to be true. Fedas v. Insurance Co. of State of Pennsylvania, 151 A. 285, 287 (Pa. 1930). Brown obtained group health insurance coverage from defendants by representing on his insurance enrollment form that he was an employee. Brown is bound by Melman's representations in the small employer health insurance application and his own representations in the enrollment form. Having accepted the benefits of group health insurance coverage from defendants, Brown is estopped from arguing he was not an employee of ECA. Cf. Bennett v. Mucci, 901 A.2d 1038, 1041-42 (Pa. Super. 2006) (one who elects limited tort coverage for a vehicle under a private passenger motor vehicle liability insurance policy cannot later claim that

the same vehicle is not a private passenger motor vehicle for purposes of Pennsylvania's Motor Vehicle Financial Responsibility Law; the insured is bound by his or her election).  Brown was an employee of ECA and a "participant" under ERISA § 502(a).[3]

>    **2.     Are Brown's state law claims completely preempted by ERISA § 502(a)?**

The court also determines whether Brown's state law claims of violation of the UIPA (Count I), bad faith (Count II), and violation of the UTPCPL (Count III), for delaying insurance benefits for one year, fall within the scope of the civil enforcement provisions in ERISA § 502(a).  In Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266 (3d Cir. 2001), plaintiff Pryzbowski requested approval from defendant U.S. Healthcare, an HMO, for surgery and related services.  After a few months, U.S. Healthcare authorized the surgery, but Pryzbowski continued to suffer severe back pain after the surgery.  Przybowski's doctor opined that the persistence of pain was most likely caused by the significant delay that occurred between the onset of the symptoms and the surgical intervention.  Pryzbowski filed a complaint asserting: (1) negligent and careless delay in giving approval for surgery causing severe and permanent injury, emotional

---

[3]This action is distinguishable from Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999).  In Cleveland, the Supreme Court found a plaintiff was not estopped from arguing under the Americans with Disabilities Act ("ADA") that she could perform the essential functions of her job with reasonable accommodation, even though the plaintiff had made a prior representation to the Social Security Administration ("SSA") that she was unable to perform substantial gainful work.  Id. at 802-3.  Cleveland described situations where a Social Security Disability Insurance claim could exist side by side with an ADA claim; for example, the ADA allows a plaintiff to show she can perform a job "with reasonable accommodation" whereas the SSA does not take reasonable accommodation into account.  Id. at 803.  Since the definition of "employee" under ERISA is identical to the traditional, common law definition of employee, Brown and Melman's representations on insurance forms that Brown was an employee are inconsistent with the claim that he was not an employee under ERISA.  Cleveland also concerned judicial estoppel whereas this action concerns equitable estoppel.

distress, and future medical expenses; (2) arbitrary and capricious delay; (3) wanton and wilful disregard for harm to plaintiff; (4) breach of health insurance contract; (5) bad faith; and (7) [sic] breach of duty to screen, hire, and train capable and responsible individuals.

The Court of Appeals stated, "the ultimate distinction to make for purposes of complete preemption is whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of § 502(a) and is completely preempted, or the quality of the medical treatment performed, which may be the subject of a state action." Id. at 273.  It found a claim alleging that an HMO declined to approve certain requested medical services or treatment as not covered under the plan regarded the proper administration of benefits.  Id.  Such a claim is completely preempted and removable.  Id.

The Court examined Pryzbowski's claims "to determine whether they could have been the subject of a civil enforcement action under § 502(a)."  Id.  It found that underlying Pryzbowski's allegations of delay in Counts One to Five of her complaint was U.S. Healthcare's policy requiring beneficiaries to use in-network specialists or obtain prior HMO approval for out-of-network specialists.  Id.  These activities constituted administration of benefits.  Id.  Had Pryzbowski sought to accelerate U.S. Healthcare's approval of the use of out-of-network providers, she could have sought an injunction under § 502(a) to enforce benefits to which she was entitled under the provisions of the civil enforcement scheme provided by Congress.  Id. at 273-74.  The Court held Pryzbowski's claims completely preempted by ERISA.  Id. at 275.

Brown's cause of action arises from defendants' delay in paying him benefits.  Had Brown sought to accelerate defendants' payment of benefits, he could have brought suit under § 502(a) for an injunction or to challenge defendants' refusal to pay him benefits.  Under

Pryzbowski, Brown's state law claims are completely preempted under ERISA § 502(a).

Because Brown is a employee of ECA and his state law claims are completely preempted under ERISA § 502(a), the court has removal jurisdiction. Brown's motion to remand will be denied.

### B. Motion to dismiss

Defendants argue Brown's claims should be dismissed because they are preempted by ERISA. ERISA expressly preempts all state claims that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). Other than disputing whether Brown was an employee under ERISA, the parties do not dispute that the ECA health insurance plan is an "employee welfare benefit plan" under 29 U.S.C. § 1002(1). In addition to complete preemption, Brown's claim under Pennsylvania's bad faith statute (Count II) is subject to express preemption. See Barber v. Unum Life Ins. Co. of America, 383 F.3d 134, 140-41 (3d Cir. 2004). ERISA also expressly preempts Brown's Pennsylvania UTPCPL claim (Count III). See Viechnicki v. Unumprovident Corp., Civ. A. No. 06-2460, 2007 WL 433479, at *6 (E.D. Pa. Feb. 8, 2007); Sparks v. Duckrey Enterprises, Inc., Civ. A. No. 05-2178, 2007 WL 320260, at *5 (E.D. Pa. Jan. 30, 2007); and Maldonado v. Unum Life Insurance Co. of America, Civ. A. No. 06-2481, 2006 WL 3164799, at *2 (E.D. Pa. Oct. 31, 2006). Although defendants have not cited case law finding the Pennsylvania UIPA (Count I) preempted by ERISA, they correctly argue there is no private cause of action under the UIPA. D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co., 494 Pa. 501, 431 A.2d 966 (1981). Defendants' motion to dismiss will be granted without prejudice to the filing of an amended complaint for any cause of action under ERISA.

**III.     CONCLUSION**

Brown's motion to remand will be denied.  Defendant's motion to dismiss will be granted without prejudice to Brown's filing an amended complaint for any cause of action under ERISA within twenty days of the date of this memorandum and order.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL BROWN** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **INDEPENDENCE BLUE CROSS,** | : | |
| **KEYSTONE HEALTH PLAN EAST, INC.** | : | |
| **QCC INSURANCE COMPANY,** | : | |
| **MAGELLAN BEHAVIORAL HEALTH,** | : | |
| **INC., and MAGELLAN HEALTH** | : | |
| **SERVICES, INC.** | : | NO. 08-1355 |

**ORDER**

**AND NOW**, this 21st day of July, 2008, upon consideration of plaintiff's motion to remand and defendant's motion to dismiss, and the parties' responses, following a hearing on July 8, 2008, at which counsel for all parties were heard, for the reasons stated in the accompanying memorandum, it is **ORDERED** that:

    1.    Plaintiff's motion to remand to state court (paper no. 4) is **DENIED**.

    2.    Defendants' motion to dismiss (paper no. 3) is **GRANTED without prejudice** to plaintiff's filing an amended complaint within twenty (20) days of the date of this order.

    /s/ Norma L. Shapiro
    Norma L. Shapiro, S.J.